UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

---

DAVID N.T. WATSON,

              Plaintiff,

- against -

COMMUNITY EDUCATION CENTERS, INC., a Delaware corporation, and JOHN J. CLANCY, an individual,

              Defendants.

---

**COMPLAINT**

**JURY TRIAL DEMANDED**

**CIVIL ACTION NO.**

Plaintiff, DAVID N.T. WATSON ("Plaintiff"), by and through his attorneys, Peckar & Abramson, P.C., as and for his Complaint against Defendants COMMUNITY EDUCATION CENTERS, INC. ("CEC") and JOHN J. CLANCY ("Clancy") (CEC and Clancy are hereafter collectively referred to as "Defendants"), hereby alleges:

### PARTIES, JURISDICTION, AND VENUE

1. This Court has proper jurisdiction over this matter on grounds of diversity of citizenship pursuant to 28 U.S.C. §1332, and given that the amount in controversy exceeds $75,000.00.

2. This Court has personal jurisdiction over each of the Defendants as they committed torts in this District. In addition, each Defendant engaged in commercial transactions taking place, at least in part, in this District, and each Defendant's conduct in those transactions is the subject of this action. Finally, to the extent that any of the Defendant's tortious acts were committed outside of this District, each Defendant knew that his acts would have consequences

in this District, and each Defendant derived substantial revenue from interstate commerce.

3. Venue is appropriate in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred here.

4. At all times material hereto, Plaintiff was and is a resident of Collier County, Florida and is otherwise *sui juris*.

5. At all times material hereto, Defendant CEC is a corporation organized under the laws of the State of Delaware which transacts business throughout the United States, including significant business in the State of Florida, and is authorized to conduct business in the State of Florida.

6. At all times material hereto, Defendant Clancy is an individual who resides in Essex County, New Jersey, and is otherwise *sui juris*.

## FACTS COMMON TO ALL COUNTS

7. CEC is in the business of providing reentry treatment and education services for adult correctional populations throughout the United States.

8. Defendant Clancy is the Chief Executive Officer ("CEO") and Chairman of the Board of CEC.

9. Plaintiff was, until his termination, the Chief Financial Officer ("CFO") of CEC.

10. In or about 1999, Plaintiff was the Controller and Assistant Treasurer for a company called Wackenhut Corrections Corporation, which has since changed its name to The GEO Group, Inc. ("GEO").

11. In or about 1999, Clancy approached Plaintiff by contacting him by telephone in Florida, and offered a job to Plaintiff to serve as the Chief Financial Officer of CEC. Plaintiff turned down the job offer at that time.

2

12. During the ensuing eight years, Plaintiff advanced to the position of Treasurer and Vice President of Finance at GEO.

13. In 2007, Plaintiff left GEO to become the Executive Vice President and Chief Financial Officer of a publicly traded company called Radiation Therapy Services, Inc. ("RTSI").

14. Shortly after joining RTSI, in or about 2007, Clancy again approached Plaintiff by telephoning him in Florida and asked if Plaintiff was interested in joining CEC, this time as a member of its Board of Directors. Again, Plaintiff declined the offer.

15. In late spring 2009, Clancy made further contact with Plaintiff by telephoning him in Florida, at which time Clancy offered Plaintiff the position of Senior Vice President and Chief Financial Officer of CEC.

16. In connection with Clancy's and CEC's offer, and in order to induce Plaintiff to accept a position with CEC, Clancy made material misrepresentations concerning the financial condition of CEC and its viability as a going concern and player in the relevant industry.

17. In this regard, on or about July 16, 2009, Plaintiff had a meeting with Defendant Clancy at the Miramar Lakes Clubhouse in Fort Myers, Florida to further discuss the position being offered, and CEC's finances and prospects.

18. During these discussions, Clancy told Plaintiff that CEC had increased its debt load in 2007 to complete an acquisition, expand several facilities and build a new facility with the goal of completing an initial public offering ("IPO") of CEC in 2008. Clancy told Plaintiff that CEC had run a dual-track process in 2008 and ultimately settled on a sale of the company, but that the sale fell through because the buyer was unable to obtain financing. Clancy further told Plaintiff that the expansion beds in CEC's facilities did not fill as anticipated because of the

economic downturn, which purportedly caused the company to fail its debt covenants in early 2009.

19. Plaintiff was specifically told by Defendant Clancy that the default had been cured in the summer of 2009 by an amendment to the company's credit agreement. Clancy further told Plaintiff that, although cash was tight, the credit agreement was no longer an issue and the outlook for the company was very good.

20. Plaintiff was told by Clancy that his role would be to improve the company's accounting function and prepare it for an IPO or sale in late 2009.

21. In connection with these negotiations, Defendants furnished Plaintiff with numerous financial documents, including draft audited financial statements for 2008, detailed bid summaries prepared by Bank of America, JP Morgan, and Avondale Partners from 2008 negotiations, reports of auditors, May 2009 financial statements, industry reports, and detailed analyses of financing opportunities for CEC.

22. On or about July 14, 2009, Defendants provided Plaintiff with a draft employment agreement.

23. In early August 2009, Defendants provided Plaintiff with a term sheet concerning a proposed purchase and lease of several of CEC's correctional facilities, and an analysis of the financial impact of a potential sale-leaseback of company facilities in conjunction with an IPO, prepared by a national bank.

24. On or about August 19, 2009, and before Plaintiff even signed an Employment Agreement, CEC's General Counsel, Debra Shannon, approached Plaintiff requesting to post Plaintiff's resume to Intralinks.

25. In consideration of, and in reliance upon the promises made by CEC, Clancy, and others at CEC, Plaintiff agreed to resign his position with RTSI and accepted the position of Senior Vice President and CFO at CEC. In this regard, on or about September 14, 2009, Plaintiff entered into an employment agreement with CEC (the "Employment Agreement").

26. Shortly after commencing his employment with CEC, however, Plaintiff soon discovered that CEC's true financial picture had been hidden from him, and that Defendants had grossly misstated the true state of its financial affairs, and failed to disclose that its financial situation was dire at the precise time they were negotiating the Employment Agreement with Plaintiff.

27. Almost immediately after Plaintiff joined CEC, the company defaulted on its amended credit facility.

28. When CEC defaulted on its amended credit facility, Plaintiff learned that most of the finance people and senior management knew, and had known, that the projections used to set the covenant levels in the amended facility were overstated.

29. As evidence that Defendants knew of the precarious financial condition of the company and failed to disclose that information to Plaintiff, CEC's Controller stated to him shortly after he started at CEC that the former CFO had anticipated that the company would default on the new agreement by August of 2009.

30. CEC lasted longer than Defendants had anticipated, and defaulted shortly after Plaintiff began his employment, when it issued its September 2009 financial data.

31. Upon information and belief, Defendant Clancy took action to inflate the projections used to set the covenant levels, which ultimately led to a default of the amended credit facilities shortly after Plaintiff joined the company.

32. Despite this enormous setback; the fact that it was now obvious that Plaintiff had been fraudulently induced to leave a lucrative executive position to join the proverbial "sinking ship;" and the quite obvious fact that the company was nowhere near being in a financial position to position itself for an IPO and potential sale, Plaintiff diligently went to work to help repair CEC's finances and stabilize the company.

33. Thereafter, for a period of over fourteen (14) months, Plaintiff worked diligently to spearhead a team of individuals whose task was to rightsize the company and secure first and second lien credit facilities on terms that would permit the company to continue to operate as a viable concern.

34. Within a few short days of CEC having closed on a $235 million refinancing deal which Defendants boldly proclaimed had served to "recapitalize[] [the] company and ... provided [it] with the liquidity to expand [its] pursuit of organic growth opportunities," Plaintiff was verbally told on December 15, 2010 that his employment was to be terminated.

35. When Plaintiff demanded that Defendants provide some explanation for his termination, they made no attempt to explain their actions, nor did they provide any opportunity for Plaintiff to cure any alleged deficiencies.

36. The actions by Defendants in this regard constitute a clear violation of the Employment Agreement.

37. The Employment Agreement provides, at Section 1 entitled "Term", as follows:

> "....the term of this Agreement shall commence on the Effective Date, and shall continue thereafter for three (3) years until terminated as herein provided. The Agreement shall renew in one year (1) increments unless Notice of Termination is provided to the other party no less than six (6) months before the expiration of the then current term...."

38. In accordance with the Employment Agreement, Plaintiff's employment was to continue through September 14, 2012, and to extend automatically thereafter unless the agreement were otherwise terminated in accordance with its express terms.

39. While Section 6(c) of the Employment Agreement permits CEC to terminate Plaintiff's employment "for cause", that agreement makes clear that the term "Cause" has a very narrow definition and includes, for instance, fraud or theft; grossly negligent or willful acts; or some other material breach of the provisions of the agreement "which breach, if curable, is not cured within 30 days after written notice is delivered to the Executive specifically identifying the manner in which the Executive has failed to observe such provisions." (Employment Agreement, § 6(c)).

40. The Employment Agreement further provides, at Section 6(f) entitled "Notice of Termination", as follows:

> "Any termination of the Executive's employment by the Company.... shall be communicated by a written 'Notice of Termination' to the other party in accordance with Section 10 hereof. The Notice of Termination shall indicate the specific termination provision relied upon, if any, and shall set forth in reasonable detail the facts and circumstances claimed to provide a basis for termination of the Executive's employment under the provision so indicated. If during the term of the Agreement, the Company shall terminate this Agreement without cause, the Company shall give the Executive ninety (90) days prior notice...."

41. CEC never served written Notice of Termination upon Plaintiff, and simply ignored the terms of the Employment Agreement by verbally announcing to him, on or about December 15, 2010 that his employment was being terminated, and with no explanation whatsoever.

42. CEC also did not provide Plaintiff with the required minimum advance notice of termination.

43. Paragraph 7 of the Employment Agreement, entitled "Compensation Upon Termination" details Plaintiff's right to further compensation and benefits from CEC upon the termination of his employment by CEC.

44. CEC has failed to compensate Plaintiff in accordance with the terms of the Employment Agreement for a "without cause" termination, and has failed and refused to pay to him the wages and benefits to which he is clearly entitled under the Employment Agreement and New Jersey law, which total in excess of $1.2 million.

45. Plaintiff has retained the law firm of Peckar & Abramson to prosecute this action and is obligated to pay the firm a reasonable fee.

## COUNT ONE
### (Breach of Contract)

46. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 45 hereof as if fully set forth herein at length.

47. The Employment Agreement constitutes a binding contract between CEC and Plaintiff.

48. Plaintiff performed each and every obligation that he owed to CEC under the terms of the Employment Agreement.

49. CEC breached the terms of the Employment Agreement by, *inter alia*:

    a.) failing and refusing to compensate Plaintiff in accordance with the Employment Agreement; and

    b.) terminating Plaintiff's employment in violation of the termination, notice, and compensation provisions of the Employment Agreement.

50. As a direct and proximate result of CEC's breach of the terms of the Employment Agreement, Plaintiff has suffered and continues to suffer damages, in an amount to be proven at trial, together with pre-judgment interest and costs.

51. Plaintiff reserves the right to claim punitive damages against CEC at the appropriate time.

**WHEREFORE** Plaintiff demands judgment against Defendant, Community Education Services, Inc. for all damages, interest, costs of suit, attorneys' fees and such other relief as this Court deems just and proper.

## COUNT TWO
### (Breach of Covenant of Good Faith and Fair Dealing)

52. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 45 hereof as if fully set forth herein at length.

53. Section 16 of the Employment Agreement provides that the agreement shall be governed by the laws of the State of New Jersey.

54. Under New Jersey law, a covenant of good faith and fair dealing is implied into every contract.

55. CEC's actions, as aforesaid, constitute a breach of the implied covenant of good faith and fair dealing with Plaintiff.

56. Plaintiff reserves the right to claim punitive damages against CEC at the appropriate time.

**WHEREFORE** Plaintiff David N.T. Watson demands judgment against defendant Community Education Services, Inc. for all damages, interest, costs of suit, attorneys' fees and such other relief as this Court deems just and proper.

## COUNT THREE
### (Fraudulent Inducement)

57. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 45 hereof as if fully set forth herein at length.

58. In order to induce Plaintiff to leave secure employment and to accept a position with CEC, Defendants made material misrepresentations concerning the financial condition and viability of CEC as a going concern, and failed to disclose to him the true financial picture of the company, including but not limited to their expectation that CEC would immediately default on its covenants because of overstated financial projections.

59. Defendants further misrepresented their intention to form a long-term and lasting business relationship with Plaintiff, when it was their unstated purpose to employ Plaintiff for only so long as was necessary to have Plaintiff repair the troubled finances of CEC.

60. These misrepresentations were material to Plaintiff's decision to accept a position with CEC.

61. At the time Defendants made these misrepresentations, it was their intention that Plaintiff rely upon these misrepresentations in deciding to leave his secure employment and to join the CEC.

62. Plaintiff reasonably relied upon these misrepresentations, and Defendants failure to disclose material facts, to his detriment.

63. As a direct and proximate result of the Defendants' misrepresentations and their failure to disclose material facts, Plaintiff has been damaged.

64. Plaintiff reserves the right to claim punitive damages against Defendants at the appropriate time.

**WHEREFORE** Plaintiff David N.T. Watson demands judgment against defendants Community Education Services, Inc. and John J. Clancy, jointly and severally, for all damages, interest, costs of suit, attorneys' fees and such other relief as this Court deems just and proper.

## COUNT FOUR
### (Violation of New Jersey Wage and Hour Law)

65. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 45 hereof as if fully set forth herein at length.

66. CEC has wrongfully withheld payment of wages, bonus, and other compensation and benefits due and owing from it to Plaintiff, despite Plaintiff's request for same

67. The acts complained of were performed by and at the direction of Defendant Clancy, who is an officer and/or shareholder of CEC.

68. The deprivation of such compensation earned by Plaintiff constitutes a violation of the New Jersey Wage and Hour Law, N.J.S.A. 34:11-1 et. seq., and has caused Plaintiff to suffer damages.

69. Under the Wage and Hour Law, Defendants are jointly and severally liable for damages suffered by Plaintiff as a result of the unlawful deprivation of compensation earned by Plaintiff.

70. Plaintiff reserves the right to claim punitive damages at the appropriate time.

**WHEREFORE** Plaintiff David N.T. Watson demands judgment against Defendants Community Education Centers, Inc. and John J. Clancy, jointly and severally, for all damages, interest, costs of suit, attorneys' fees, and such other relief as this Court deems just and proper.

## COUNT FIVE
## (Declaratory Judgment)

71.  Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 45 hereof as if fully set forth herein at length.

72.  The Employment Agreement between CEC and Plaintiff contains terms relating to confidentiality, as well as covenants not to compete with CEC, to interfere with its business relationships, and/or to solicit its clients upon separation from employment.

73.  By reason of the foregoing, Plaintiff is entitled to a declaratory judgment against CEC, declaring that CEC is in breach of the Employment Agreement.

74.  CEC's breaches of the Employment Agreement excuse Plaintiff from any further performance of obligations thereunder, including but not limited to: i) any obligation to comply with terms relating to confidentiality, as well as covenants not to compete with CEC, interfere with its business relationships, and/or solicit its clients; ii) any obligation to comply with the purported non-compete clause in the Employment Agreement which is, in any event, void and unenforceable as violative of public policy and otherwise an invalid restraint on trade.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court declare his rights under the Employment Agreement, enter an Order specifying the respective rights and obligations of the parties thereunder, and provide such other and further relief the Court deems just, equitable and proper.

[Continued on next page]

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted,

**PECKAR & ABRAMSON, P.C.**
*Attorneys for Plaintiff,*
*David N.T. Watson*
One Southeast Third Avenue, Suite 3100
Miami, FL 33131
Telephone:   305-358-2600
Facsimile:   305-375-0328

By: _____
Ralf R. Rodriguez, Esq.
Florida Bar No. 138053